Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2020 08:07 AM CDT

- 686 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

James Beran, appellant, v. Nebraska Orthopaedic
and Sports Medicine, P.C., appellee.

___ N.W.2d ___

Filed August 4, 2020.    No. A-19-783.

1. **Evidence: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.
2. **Appeal and Error.** Appellate review of a district court's use of inherent power is for an abuse of discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. **Courts.** Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice.
5. **Trial: Courts.** A trial court has broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.

Appeal from the District Court for Lancaster County: Kevin R. McManaman, Judge. Affirmed.

Greg Garland, of Garland MedMal Law, L.L.C., Jerry Fichter, of Fichter Law Office, and Kathy Pate Knickrehm for appellant.

William R. Settles, of Lamson, Dugan & Murray, L.L.P., for appellee.

Moore, Chief Judge, and Riedmann and Arterburn, Judges.

- 687 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

Riedmann, Judge.

## INTRODUCTION

James Beran appeals the decision of the district court for Lancaster County which excluded expert testimony on the grounds that Beran failed to disclose the opinion to Nebraska Orthopaedic and Sports Medicine, P.C. (Nebraska Orthopaedic), prior to the witness' trial deposition. We find the district court's decision was not an abuse of discretion and therefore affirm.

## BACKGROUND

Beran sustained an injury to his left shoulder in April 2015. In May, Dr. Ronald Schwab, an orthopedic surgeon employed by Nebraska Orthopaedic, performed rotator cuff repair surgery on Beran's shoulder. After the surgery, Beran developed complications that he later claimed were caused by a postoperative infection of the shoulder joint. Schwab performed a second surgery on Beran's shoulder in July, but Beran continued to experience symptoms and pain. Schwab then referred Beran to a different orthopedic surgeon, Dr. Kirk Hutton, who performed a third surgery on Beran's shoulder in February 2016.

In April 2017, Beran sued Schwab and Nebraska Orthopaedic, alleging that Schwab was negligent in his treatment of Beran because he failed to timely diagnose and appropriately treat the infection in Beran's shoulder after the initial surgery. Schwab was not timely served with process and was ultimately dismissed as a defendant, leaving Nebraska Orthopaedic as the sole defendant at trial.

On December 11, 2017, the district court entered a progression order. Therein, the court ordered the disclosure of expert witnesses to be completed at least 90 days prior to the pretrial conference scheduled for August 17, 2018, with trial scheduled to begin on September 4. The order required the disclosure of information regarding each expert witness and a complete statement of the opinion to be rendered and the basis therefor; it further stated, "Expert testimony will not be permitted at trial unless it is contained in the disclosure."

- 688 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

The progression order was modified in June 2018 and modified again in August due to continuances of the trial date. The progression order was modified a final time in February 2019, and trial was set for July. Pursuant to this final progression order, a pretrial conference was scheduled for June 21; thus, expert witness disclosures were to be completed 90 days prior to that date.

Beran was deposed in February 2018. At that time, he testified that at his first appointment with Hutton in December 2015, Hutton told him that the infection that Schwab let go on too long ruined the soft tissue in his shoulder.

Nebraska Orthopaedic originally planned to depose Hutton but changed its mind in April 2018 due to the expense. At that time, Nebraska Orthopaedic was unwilling to waive Hutton's unavailability for trial; thus, in December 2018, Beran sent a letter to Hutton, notifying him that his live testimony would be required at trial. The letter informed Hutton that his testimony would not involve any standard of care opinions, but would be limited to his initial impressions and etiology of Beran's condition, his treatment of Beran, and Beran's limitations and future medical needs. Despite this, Beran attached to the letter a photograph of his shoulder taken a few days after his initial surgery and a report from Dr. Stephen Felts, an infectious disease doctor. Nebraska Orthopaedic was unaware of this letter.

Although a bit unclear from the record, the parties later agreed to take a trial deposition of Hutton, rather than require his in-person testimony at trial, so in February 2019, Beran deposed Hutton. Hutton explained that Beran was referred to him in December 2015 for a second opinion on his shoulder after he continued to have complications following two surgeries by Schwab. After reviewing Beran's history and performing a physical examination, Hutton believed that Beran had a recurrent rotator cuff tear with significant retraction and severe muscle atrophy, and he thought there was the possibility of a low-grade infection in Beran's shoulder based on his history

- 689 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

of redness, inflammation, and drainage after the original surgery. However, Schwab had previously obtained cultures from Beran's shoulder that were negative for infection. Hutton took additional blood from Beran to determine if there was an ongoing infection, but his bloodwork was negative for markers of infection. Hutton explained that although he believed there was the possibility of infection, he had no documentation that showed that Beran's shoulder was infected.

Based on Beran's history, Hutton's examination, and the bloodwork results, Hutton believed he could safely proceed with surgery without concern that there was an ongoing active infection. When he performed the surgery on Beran's shoulder, he could not confirm whether there had been an infection in the past. He admitted that it was possible that there was a prior infection, but he was not able to confirm it based on what he saw.

Hutton stated that because he did not find an active infection when he operated on Beran's shoulder, he could not say with a degree of medical certainty whether Beran ever had an infection in his shoulder. He acknowledged that he would be concerned that there was an infection from the history of redness and drainage, but he had no clinical proof that there was one. He ultimately testified, "I guess knowing what was going on, I would have an opinion that there was some type of low-grade infection going on at that point." Nebraska Orthopaedic objected at that time on the ground of the testimony being an undisclosed expert opinion and indicated an objection to the testimony on the parties' joint exhibit list filed as an attachment to the joint pretrial conference order in June 2019. In an order ruling on the objection in July, the district court sustained the objection.

Beran moved for reconsideration of the court's decision, and a hearing was held the morning before trial began. At the hearing, Beran offered several exhibits into evidence, including the December 2018 letter to Hutton in which he provided Beran's postoperative picture and Felts' report. Beran argued

- 690 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

that the case is about whether there was an existing infection in his shoulder joint or not and that Hutton was the only one to see it. Beran argued that he needed the jury to hear that part of Hutton's testimony and that there was no way for him to disclose this opinion to Nebraska Orthopaedic because Hutton was not a retained expert witness, so Beran had no contact with him and did not know what his opinion would be.

Nebraska Orthopaedic asserted that it was previously unaware of the December 2018 letter to Hutton. It submitted that based on that additional information, Hutton's comment that "knowing what was going on" he would have an opinion, evinces that Hutton's opinion was not based on his treatment of Beran; rather, it was based upon "what was going on" during Schwab's treatment of him. The district court agreed, noting that Hutton was a treating doctor, but that his opinion did not arise from his treatment.

The court questioned Beran's comment that he did not know what Hutton's opinion would be, asking him to confirm that it was Hutton who initially told him that his shoulder problems originated with an infection that resulted from Schwab's care. Based on Beran's confirmation, the district court recognized that it "was early on" that Beran knew Hutton at least suspected that Beran had an infection in his shoulder after the initial surgery. Ultimately, the court declined to reverse its previous decision to exclude Hutton's opinion.

Trial proceeded. Beran testified regarding his injury and the progression of his treatment thereafter. He also presented the testimony of Felts and an orthopedic surgeon from Missouri, both of whom opined that Beran had an infection in his shoulder after the initial surgery and that Schwab breached the standard of care when he failed to diagnose and treat the infection. Hutton's deposition, as described above, was also played for the jury at trial. The video was redacted to remove the opinion testimony that the district court excluded.

Nebraska Orthopaedic called Schwab, who rendered his opinion that Beran never had an infection in his shoulder

- 691 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

joint; he said there may have been a small superficial infection on the skin, which responded very well to oral antibiotics, but the cultures were negative and he was not able to identify any bacteria present to demonstrate a deep infection in the shoulder joint. Thus, in his opinion, neither of the re-tears of Beran's rotator cuff, preceding Beran's second and third surgeries, was caused by infection.

Another orthopedic surgeon from Omaha, Nebraska, testified similarly, explaining his opinion that Schwab's postoperative care of Beran met the standard of care. Like Schwab, he testified that it was possible that Beran had a superficial infection in the incision and the skin around it, but that it was properly treated with antibiotics and resolved. He noted that Schwab obtained deep cultures during the second surgery in July 2015, which were negative for the presence of bacteria. He opined that Beran never had an infection in his shoulder joint.

Nebraska Orthopaedic also presented the deposition testimony of a Nebraska physician specializing in infectious diseases. The specialist opined that Schwab acted appropriately in his treatment of Beran's postoperative complaints. He said with the benefit of hindsight and knowledge of the overall progression of the case, the evidence would suggest that Beran did not have a deep-seated infection of the shoulder joint. He explained that a superficial infection can progress to a deeper joint infection, which would then typically require additional and more intensive treatment such as intravenous antibiotics. If a patient with a deep joint infection does not get the necessary treatment, the infection will generally progress resulting in symptoms such as more inflammation and more joint destruction, as well as symptoms such as fever, chills, and potentially sepsis, hypotension, and acidosis; however, Beran showed none of those symptoms.

After hearing all of the evidence, the jury found that Beran had not met his burden of proof and entered a verdict in favor of Nebraska Orthopaedic. Beran appeals.

- 692 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

## ASSIGNMENT OF ERROR

Beran assigns that the district court abused its discretion in excluding Hutton's opinion testimony.

## STANDARD OF REVIEW

[1-3] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion. *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017). Similarly, appellate review of a district court's use of inherent power is for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

## ANALYSIS

Beran argues that the district court abused its discretion in excluding the opinion testimony of Hutton that Beran had an infection in his shoulder following his initial surgery. He relies on the factors elicited in *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987), and on *In-Line Suspension v. Weinberg & Weinberg*, 12 Neb. App. 908, 687 N.W.2d 418 (2004), which applies the *Norquay* factors. Nebraska Orthopaedic argues that *Norquay* does not apply, citing *Putnam v. Scherbring, supra*.

In *Putnam v. Scherbring, supra*, the Nebraska Supreme Court recognized that its analysis in *Norquay v. Union Pacific Railroad, supra*, was directed to a trial court's authority to preclude testimony as a discovery sanction and that in *Norquay*, a party failed to comply with a request for discovery and additionally failed to seasonally supplement its answer to an interrogatory. In *Norquay*, there was no progression order and the trial court did not find that the testimony in question was untimely disclosed; therefore, the trial court's authority to preclude testimony was premised solely upon its power to issue a discovery sanction under rule 37 of the Nebraska Court Rules of Discovery, now codified as Neb. Ct. R. Disc. § 6-337. To

- 693 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

ensure a balanced approach to punish those whose conduct warrants a § 6-337 sanction and to deter those who may be inclined or tempted to frustrate the discovery process, the court in *Norquay* outlined several factors a court should consider before imposing a sanction.

[4] The Supreme Court found that the facts in *Putnam v. Scherbring, supra*, however, established that the trial court's exclusion of evidence was not a discovery sanction like in *Norquay*; rather, it was the court's enforcement of its previous orders which had extended discovery deadlines and continued trial dates. The Supreme Court observed that

> the parties stipulated to a proposed progression order with a discovery deadline and the district court adopted and entered the progression order. The court was initially flexible and amended the order and continued trial three times to accommodate Putnam. But, it ultimately elected to enforce its progression order when, shortly before trial, Putnam attempted to disclose new expert opinions and evidence which would undoubtedly cause further delay. This was fundamentally different from imposing a sanction for a party's attempt to abuse the discovery process.

*Putnam v. Scherbring*, 297 Neb. at 877, 902 N.W.2d at 146. The Supreme Court reiterated that Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice and found it apparent that the trial court relied on this authority and not its authority to issue a discovery sanction. *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017). Therefore, the court concluded that the correct analytical framework did not require the trial court to consider the *Norquay* factors. *Putnam v. Scherbring, supra*.

Likewise, in the present case, the district court entered an initial progression order in December 2017, requiring the parties to disclose information regarding their expert witnesses at least 90 days prior to August 17, 2018. The order specifically

- 694 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

informed the parties that expert testimony would not be permitted at trial if it was not disclosed to the opposing party. At that time, trial was scheduled to begin in September. The progression order was modified several times, pursuant to the court's granting several continuances of the trial date.

Hutton's trial deposition occurred on February 20, 2019. At that time, the operative progression order mandated that expert witness disclosures occur 90 days prior to the pretrial conference scheduled for February 22. Thus, Nebraska Orthopaedic objected to the opinion testimony Hutton offered regarding the existence of an infection in Beran's shoulder after the initial surgery on the ground that it had not been disclosed, and the objection was later sustained by the court as an undisclosed opinion. Nebraska Orthopaedic does not contend that Beran failed to comply with a discovery request or failed to seasonally supplement interrogatory answers; rather, it complains that Hutton's opinion was not disclosed until his deposition was being taken for trial purposes. Therefore, similar to *Putnam v. Scherbring, supra*, we find that the district court's decision to exclude Hutton's opinion testimony was not a discovery sanction, but instead, was the court's enforcement of its progression orders which imposed a deadline by which the parties were required to disclose their expert witnesses and the contents of their testimony. Accordingly, the *Norquay* factors are not applicable here. (We note that on February 25, which was 5 days after Hutton's deposition, the district court entered an amended progression order but this does not affect our analysis because the deposition was taken for the use at trial; hence, Hutton would not be available for additional examination at trial.)

[5] Based upon its conclusion that the trial court was not required to consider the *Norquay* factors, the Supreme Court in *Putnam v. Scherbring, supra*, reviewed the trial court's exercise of inherent power for an abuse of discretion. The Supreme Court emphasized that a court abuses its discretion when its decision is based upon reasons that are *untenable*

- 695 -

Nebraska Court of Appeals Advance Sheets
28 Nebraska Appellate Reports
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

*or unreasonable* or if its action is *clearly* against justice or conscience, reason, or evidence. *Id*. This is a fairly deferential standard. *Id*. Moreover, a trial court has broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. *Id*.

In finding no abuse of discretion in that case, the Supreme Court in *Putnam v. Scherbring*, 297 Neb. 868, 902 N.W.2d 140 (2017), emphasized that there was no evidence that the trial court based its decision to exclude untimely evidence for any reasons that were untenable or unreasonable. It noted that in fact, the record reflected that the court carefully considered its decision and sought to achieve a balanced outcome for both parties. For those reasons, the Supreme Court could not find that the court's action was *clearly* against justice or conscience, reason, and evidence and quoted the trial judge's comment that "'proposed scheduling orders have to mean something.'" *Id*. at 878, 902 N.W.2d at 147.

Similarly, here, the record and the district court's comments establish that its decision was not untenable or unreasonable. The initial progression order was extended several times as the trial date was repeatedly continued. The initial progression order warned the parties that failure to disclose information about an expert witness would result in the exclusion of that witness' testimony. And given the number of times the progression order was amended, Beran had ample time to disclose Hutton's opinion. Hutton's request for "thousands of dollars to do anything" does not excuse Beran from making the required disclosures.

The fact that Hutton, one of Beran's treating physicians, would testify as a witness was not a surprise to either party. In fact, Nebraska Orthopaedic included Hutton as a defense witness on its mandatory disclosures, indicating that "Hutton would possess information regarding his treatment, surgical care and prognosis for [Beran] subsequent to his treatment and surgeries at [Nebraska Orthopaedic]." However, Nebraska Orthopaedic had no notice prior to Hutton's trial deposition

- 696 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
28 NEBRASKA APPELLATE REPORTS
BERAN v. NEBRASKA ORTHO. & SPORTS MEDICINE
Cite as 28 Neb. App. 686

that Beran was going to ask him for an expert opinion based on facts beyond his personal treatment of Beran.

Beran argues that he had no way of knowing what Hutton's opinion would be until Hutton's deposition. However, Beran testified at his deposition in February 2018 that it was Hutton who told him an infection was responsible for ruining the soft tissue in his shoulder. And the additional information Beran attached to the December 2018 letter to Hutton indicates that he anticipated eliciting information from him beyond that which Hutton observed through his treatment of Beran.

At the hearing on Beran's motion to reconsider the exclusion of Hutton's opinion, Beran admitted that it was Hutton who initially told him that his shoulder problems originated with an infection that happened from Schwab's care. Based on this, the district court recognized that it "was early on" that Beran knew Hutton at least suspected that Beran had an infection in his shoulder after the initial surgery. Thus, given that the progression order was extended several times, Beran had knowledge early on of Hutton's opinion regarding an infection, and the evidence that Beran contemplated asking Hutton for an opinion based on facts beyond his personal knowledge, we conclude that the district court did not abuse its discretion in enforcing its progression order and excluding the opinion testimony of Hutton.

## CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.