Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/10/2024 06:08 PM CDT

IVAN J. KONSUL, APPELLANT, V.
JUAN ANTONIO ASENSIO, M.D., APPELLEE.

___ N.W.3d ___

Filed June 14, 2024.    No. S-23-441.

1. **Pretrial Procedure: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.

2. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.

3. **Trial: Expert Witnesses: Appeal and Error.** An appellate court reviews de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, and an appellate court reviews for abuse of discretion how the trial court applied the appropriate standards in deciding whether to admit or exclude an expert's testimony.

4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

5. **Directed Verdict.** A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.

6. **Directed Verdict: Appeal and Error.** In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence.

7. **Rules of the Supreme Court: Pretrial Procedure.** Inasmuch as the Nebraska Court Rules of Discovery in Civil Cases are generally and substantially patterned after the corresponding discovery rules in the Federal Rules of Civil Procedure, Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in construing similar Nebraska rules.

8. **Trial: Expert Witnesses: Proof.** It is the burden of the proponent of expert testimony to establish the necessary foundation for its admission.

9. **Malpractice: Physicians and Surgeons: Expert Witnesses.** Expert testimony offered to establish the standard of care in a medical malpractice case is admissible only if its proponent can demonstrate the expert's familiarity with the relevant standard of care in the defendant's community or a similar community.

10. ____: ____: ____. Expert testimony concerning the standard of care in a medical malpractice case should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture.

11. **Trial: Expert Witnesses.** Where an expert's opinion is mere speculation or conjecture, it is irrelevant and cannot assist the trier of fact.

12. **Malpractice: Physicians and Surgeons: Expert Witnesses: Proof.** The burden is on the proponent of standard-of-care testimony to demonstrate that the expert is familiar with the customary practice among physicians in the defendant's community or a community that is similar in terms of available resources, facilities, personnel, practices, and other medically relevant factors. If a party cannot demonstrate his or her expert's familiarity with such standard of care, then the expert's testimony is properly excluded.

13. **Malpractice: Physician and Patient: Proximate Cause: Expert Witnesses.** To make a prima facie case for medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm. Generally, expert testimony is required on each element.

Appeal from the District Court for Douglas County, Jeffrey J. Lux, Judge. Affirmed.

Steven H. Howard, of Steve Howard Law, P.C., L.L.O., for appellant.

Cathy S. Trent-Vilim, Patrick G. Vipond, and Olivia R. McDowell, of Lamson, Dugan & Murray, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Ivan J. Konsul appeals the order of the district court for Douglas County that dismissed with prejudice his medical malpractice action against Juan Antonio Asensio, M.D. Konsul claims, inter alia, that the district court erred when it sustained Asensio's objection to testimony by Konsul's expert witness on the basis that the witness did not provide sufficient foundation to provide standard-of-care testimony. Konsul also claims the court erred in its rulings regarding Asensio's refusal during a deposition to answer certain questions regarding standards of care relative to the performance of other medical care providers. Although we determine that the court erred in its rulings regarding Asensio's deposition, such error was harmless because we ultimately determine that the court correctly ruled that there was not sufficient foundation for Konsul's expert witness to provide standard-of-care testimony. Therefore, granting a directed verdict and dismissal was proper due to Konsul's failure to provide evidence of the standard of care. We affirm the dismissal of Konsul's action.

## STATEMENT OF FACTS

In November 2017, Konsul filed a complaint pursuant to the Nebraska Hospital-Medical Liability Act against Asensio and two other doctors. The two other doctors were later dismissed from the action, and in September 2019, Konsul filed the operative amended complaint that named Asensio as the sole defendant.

The claim arose from treatment Konsul received after being admitted to Creighton University Medical Center (Creighton) in Omaha, Nebraska, following a motor vehicle accident on

November 12, 2015. Konsul was hospitalized for approximately 3 weeks, and during that time, he was treated by a team of doctors, including Asensio, who is a trauma surgeon. Following chest surgery to address multiple rib fractures, Konsul developed symptoms, including pain in the right ankle. An ultrasound was performed and showed that Konsul had acute right occlusive deep vein thrombosis, and a chest CT scan showed evidence of pulmonary emboli. The medical team determined that an inferior vena cava filter (IVC filter) should be placed to prevent migration of the deep vein thrombosis. On November 27, Asensio and a resident doctor performed surgery to place the IVC filter. When Konsul was later discharged from the hospital, Asensio signed discharge paperwork.

In the amended complaint, Konsul set forth claims that Asensio had committed medical malpractice and that Asensio had failed to obtain Konsul's informed consent before he placed the IVC filter. Konsul alleged that Asensio had violated applicable standards of care in various respects, including, inter alia, unnecessary placement of the filter, improper and inaccurate location of the filter, failing to warn Konsul of the long-term risks of the filter remaining in his body, failing to formulate and communicate an appropriate plan for timely and safe retrieval and removal of the filter, failing to inform Konsul and Konsul's other medical care providers of the need for evaluation and potential removal of the filter, and "[a]bandoning" Konsul 1 week after placement of the filter without informing Konsul or the other medical care providers that he did not intend to provide further treatment.

Konsul alleged that because of Asensio's failures, the filter was allowed to remain in his body for a prolonged period, beyond the time for safe removal of the filter. Konsul alleged that the filter had migrated throughout his body and became lodged behind his heart. Konsul alleged that other medical care providers had unsuccessfully attempted to remove the filter and that it was now permanently lodged behind

his heart. Konsul alleged that but for Asensio's violation of applicable standards of care, the filter could have been timely removed, and would not have migrated to the position behind his heart, and he would not have suffered damages, including physical pain, mental suffering, and additional health care costs. Konsul alleged that because of the position of the filter behind his heart, the filter could move or migrate and could potentially kill him at any moment. He alleged that because he was aware of this possibility, he lives with "fear of instant death" and mental suffering.

In January 2019, Asensio filed a motion for summary judgment. In support of the motion, Asensio submitted an affidavit in which he set forth his education, training, and experience and his familiarity with the standard of care in Omaha. In the affidavit, Asensio opined that he had met the applicable standard of care in his treatment of Konsul and was not the proximate cause of any of Konsul's alleged damages. The district court deferred ruling on Asensio's motion for summary judgment until further discovery was conducted.

As part of discovery, Asensio was deposed by Konsul on April 30, 2019. At the time of the deposition, Konsul had not yet dismissed the other defendants and had not yet filed the operative amended complaint. Konsul's questioning of Asensio began by covering Asensio's medical training and background and continued to Asensio's treatment of Konsul. Asensio generally stated that, regarding the IVC filter that he had placed, he had met the applicable standard of care relating to placement of the filter. In response to a question whether the filter was intended to be permanent or temporary, Asensio stated that he had been asked to place the filter and that "then, subsequently, that determination [of whether the filter would be permanent or temporary] was made by others that provided that particular care." Asensio further stated that the "filter was placed to be able to prevent [Konsul] from having further pulmonary emboli" and that the decision whether the filter would be permanent or temporary "could have gone either

way." Asensio later stated that "other continuing postoperative care was rendered by [Konsul's] attending trauma surgeon of record, and those decisions [regarding removal of the filter], if they were made, [he] was not privy to them."

At certain points in the deposition, Konsul asked questions regarding the medical care provided by other doctors, and Asensio's counsel objected and advised Asensio not to answer the questions. At one point, Konsul asked Asensio, "Are you aware of any standard of care violations committed by any of your colleagues?" Asensio's counsel stated, "Well, I guess I'll object. I don't know that he's got to be your expert on any of that subject." Konsul's counsel asked what the objection was, and Asensio's counsel replied, "That you're making an expert witness out of the defendant."

After further discussion, Konsul asked Asensio, "Doctor, are you going to come to trial and say that some other member of the team failed to meet the standard of care?" Asensio's counsel instructed Asensio to not answer the question. Konsul's counsel initially stated, "I think we'll convene the deposition and take this before the Court then." After discussion with Asensio's counsel, Konsul's counsel decided to continue the deposition and to certify the questions Asensio refused to answer for review by the court.

At several later points in the deposition, Konsul asked questions regarding the standard of care of other doctors, to which Asensio's counsel advised Asensio not to answer, and Konsul indicated the questions would be certified for review by the court. The questions included the following: "So do you fault [the facility to which Konsul was discharged] for not making plans to remove the filter?" "Whether you'll answer it or not, do you know whether or not another health care provider for . . . Konsul violated a standard of care?" "Doctor, have you had moments when you were concerned about the standard of care of a colleague in your career?" "Whose job was it to make arrangements for the filter removal?" Other questions certified by Konsul included the following: "Are you aware

of this patient in any way being noncompliant or negligently contributing to the malplacement of the IVC filter?" "Can you agree that the negligence of more than one health care provider may, at times, lead to a single untoward outcome for the patient?"

On July 10, 2019, the district court ruled on a motion filed by Asensio in which he sought to prevent Konsul from "soliciting" Asensio's opinion as to any deviation from the standard of care by any other medical care provider who had provided medical care to Konsul. The court stated that Asensio had based his motion on attorney-client privilege. The court found that Asensio was justified in raising the privilege, and it therefore granted Asensio's motion and ordered that any future deposition should be limited accordingly.

After further proceedings and after the original judge assigned to this case retired and was replaced by another judge, Konsul filed a motion in February 2022 for the court to reconsider and reverse its ruling in the July 10, 2019, order. In the alternative, Konsul moved for an order in limine restricting Asensio from providing expert testimony on standard of care.

After briefing and oral argument, the court entered an order on January 13, 2023, ruling on Konsul's motions. The court first rejected Konsul's argument to the effect that during the deposition, Asensio did not follow Neb. Ct. R. Disc. § 6-330 (rev. 2016) (Rule 6-330), which requires a statement of the basis of an objection to a question and provides that a deponent may be instructed not to answer a question only when necessary for certain purposes, including to preserve a privilege. The court reasoned that although there was not a statutory privilege that specifically encompassed the situation, Asensio's counsel had adequately articulated a basis for refusal to answer Konsul's questions regarding the standard of care of other medical care providers when counsel stated that Asensio would not be an expert witness for Konsul. The court cited Neb. Rev. Stat. § 27-501 (Reissue 2016), which

generally states that no person has the privilege to refuse to be a witness except as otherwise provided by law. The court also cited Neb. Rev. Stat. § 27-706 (Reissue 2016), which provides for court appointment of an expert witness but also provides that "[a]n expert witness shall not be appointed by the judge unless he consents to act." The court read Konsul's motion essentially as a request to appoint Asensio as an expert witness who would give an opinion regarding whether there was a deviation from the standard of care by the other medical care providers involved in this case. The court stated that the record established that Asensio did not consent to being an expert witness for this purpose. The court further reasoned that Asensio's testimony that he did not personally deviate from the standard of care could not be characterized as his consent to be an expert witness regarding the other medical care providers. The court appeared to agree with Asensio that he was privileged not to answer certain questions and declined to order Asensio to answer Konsul's questions regarding the standard of care applicable to the other medical care providers. The court rejected Konsul's other arguments, and it therefore overruled Konsul's motion for reconsideration or for an order in limine.

The case went to a jury trial in May 2023. Evidence presented by Konsul in his case in chief included Konsul's own testimony. Konsul also called as a witness the doctor who had unsuccessfully attempted to remove the IVC filter. This doctor testified solely as a fact witness, and Konsul did not attempt to establish the doctor as an expert witness or to elicit testimony regarding the standard of care applicable to Asensio. Konsul played portions of Asensio's videotaped deposition, but he did not call Asensio as a witness.

Konsul also called as a witness Dr. David Dreyfuss, who was intended to provide expert testimony regarding the standard of care applicable to Asensio. Dreyfuss began by testifying regarding his general background and qualifications, including his education, training, and experience. Dreyfuss

testified that after completing residencies and fellowships in Vermont and New Jersey, he had practiced in Binghamton, New York, since 1987. Dreyfuss testified specifically regarding his experience placing and removing IVC filters. Dreyfuss testified that to prepare to testify in the present case, he had reviewed materials in the case, including, inter alia, depositions of Asensio and Konsul and medical records from Konsul's hospitalization. Dreyfuss responded in the affirmative to Konsul's question whether he was "prepared to tender opinions under a certain definition of standard of care here in Nebraska."

When Konsul asked Dreyfuss to tell the jury his opinions regarding the standard of care in this case, Asensio requested a foundational voir dire before Dreyfuss gave his opinions. Asensio elicited testimony that Dreyfuss was not licensed to practice medicine in Nebraska, had not practiced medicine or trauma surgery in Nebraska, had spent his entire career in New York, and had never been in Omaha before the day of the trial. Dreyfuss testified that he was familiar with the existence of Omaha and Creighton but that he was not familiar with them in the sense that he did not know "anything substantive about them." In response to Asensio's question, Dreyfuss agreed that in preparing to testify in this case, he had not come to Omaha or done any investigation into Creighton's medical center as to its facilities, personnel, and practices. At the end of this questioning, Asensio asked the court to strike Dreyfuss as an expert witness on the basis that Dreyfuss did not have sufficient foundation to give an opinion regarding the standard of care in Omaha. Asensio cited this court's decision in *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023), which had been filed on May 5, 2023, less than 1 week before the trial began.

The court allowed Konsul to question Dreyfuss to provide further foundation. Dreyfuss testified that regarding the issues in this case, there was a national standard of care that was "the same in Omaha as it is in Binghamton as it was in

Vermont and New Jersey when [he] trained." When Konsul attempted to question Dreyfuss regarding the national standard of care, Asensio objected based on foundation. In a sidebar conference, the court and counsel discussed *Carson v. Steinke*, and the court set forth its understanding of how it should be applied to the present case. Konsul continued questioning Dreyfuss to attempt to elicit the necessary foundation. Dreyfuss testified that he had given expert testimony in communities that he considered similar to Omaha, and he specifically identified "New York City; Philadelphia; Miami . . . ; Tampa, Florida — several large cities throughout the country — Las Vegas, Nevada." Konsul questioned Dreyfuss regarding what he learned about medical resources in Omaha by reviewing the records in this case. He testified, inter alia, that "[t]here was never any mention of any equipment not being available," and he specifically noted that a "filter was readily available." Dreyfuss testified that facilities available in Omaha were "wonderful and exemplary" and that medical personnel at Creighton included "the full gamut of very qualified people." Dreyfuss testified that he was familiar with the resources, facilities, personnel, and practices in communities similar to Omaha, including those he had listed earlier.

After various additional attempts by Konsul to establish foundation and further objections by Asensio, the court ultimately granted Asensio's motion to strike Dreyfuss as an expert witness. The court reasoned that under *Carson v. Steinke*, "in order to get to universal standard of care," the witness needs to have "personal knowledge" of the practice of medicine in a specific locality. The court stated that Dreyfuss had not "availed himself of doing an investigation to find out what the standard of care is [in Omaha] and to find out what this community offers in terms of available facilities, personnel, equipment, or practices" and that Dreyfuss' "only information is what he read regarding what facility was available, what personnel was available, what equipment was available, and what practice was available in this one particular case." The

court stated that Dreyfuss needed the understanding of what was available in Omaha to say that the standard of care in another community "would be the same as Omaha's standard of care" and that such standard is "equal to what he's saying the national standard is." Based on this reasoning, the court sustained Asensio's foundation objection and ruled that Dreyfuss was not competent to testify as to standard of care and that any such testimony would be excluded.

Thereafter, Konsul rested his case in chief, and Asensio moved for a directed verdict on the basis that there was not sufficient evidence of the standard of care, deviation from the standard of care, or causation. The district court sustained the motion for directed verdict and reasoned that because Konsul had provided no admissible expert testimony on the standard of care, which was a necessary element of his claim, reasonable minds could not differ that he had not proved his claim. The court filed an order of dismissal dated May 11, 2023, in which it set forth its reasoning for striking Dreyfuss' expert testimony on standard of care and for determining that a verdict should be directed against Konsul. The court dismissed Konsul's complaint with prejudice.

Konsul appeals the order that granted a directed verdict and dismissed his complaint with prejudice.

## ASSIGNMENTS OF ERROR

Konsul generally claims that the district court erred when it overruled his motion for reconsideration of its rulings regarding the deposition of Asensio. He specifically claims that the district court erred when it treated Konsul's questioning of Asensio as a request to appoint Asensio as an expert witness under § 27-706 and when it interpreted the statute as providing a privilege for a party-opponent who had already established himself as an expert witness. He further specifically claims that the court erred when it ruled that, under Rule 6-330, the instructions by Asensio's counsel to Asensio not to answer certain questions were a proper assertion of a

privilege. Konsul also claims the district court erred when it struck Dreyfuss as an expert witness based on the locality rule and when it thereafter granted Asensio's motion for directed verdict based on Konsul's failure to provide evidence of the standard of care and dismissed the case.

## STANDARDS OF REVIEW

[1,2] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion. *Timothy L. Ashford, PC LLO v. Roses*, 313 Neb. 302, 984 N.W.2d 596 (2023). However, the district court's rulings relating to depositions taken during discovery in this case involve statutory interpretation. When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023).

[3,4] We review de novo whether the trial court applied the correct legal standards for admitting an expert's testimony, and we review for abuse of discretion how the trial court applied the appropriate standards in deciding whether to admit or exclude an expert's testimony. *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

[5,6] A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Id.* In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every

controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Id.*

## ANALYSIS

*Deposition Questions.*

Konsul assigns error to the court's overruling of his motion for reconsideration and its resolution of issues therein related to the deposition of Asensio. He specifically argues that the court failed to enforce Rule 6-330, which he contends prohibited Asensio's counsel from instructing Asensio not to answer certain of Konsul's questions. Konsul contends that the court erred in its reasoning when it treated Konsul's questioning of Asensio as a request under § 27-706 to appoint Asensio as an expert witness and when it treated Asensio's objection to the questioning as the assertion of a privilege under § 27-706. We agree with Konsul's contentions that directing Asensio not to answer was not warranted and that the approval thereof by the district court based on assertion of a privilege was erroneous. We determine that § 27-706 did not set forth a privilege under these circumstances and, moreover, that Asensio's objection based on § 27-706 did not constitute the proper assertion of a privilege that would have allowed Asensio's counsel to instruct Asensio not to answer the questions. As we explain later in our analysis, we determine that although there were errors surrounding the district court's rulings regarding the deposition issue, they prove to be harmless.

We first examine Rule 6-330, which governs the taking of depositions during discovery. Subsection (c) addresses the conduct of examination and cross-examination, and subsection (c)(1) provides, in relevant part, that "[a]ll objections made at time of the examination . . . to the evidence presented . . . shall be noted by the officer upon the deposition" and that "[e]vidence objected to shall be taken subject to the objections." Subsection (c)(2) provides, "An objection must be stated concisely in a nonargumentative and nonsuggestive

manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)." Subsection (d) provides, in part, that

> the deponent or a party may move to terminate or limit the deposition on the ground that (1) it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party or (2) the interpreter is not rendering a reasonably complete and accurate interpretation or is repeatedly altering, omitting, or adding things, including explanations, to what is stated.

[7] Rule 6-330(c)(2) mirrors Fed. R. Civ. P. 30(c)(2). Inasmuch as the Nebraska Court Rules of Discovery in Civil Cases are generally and substantially patterned after the corresponding discovery rules in the Federal Rules of Civil Procedure, Nebraska courts will look to federal decisions interpreting corresponding federal rules for guidance in construing similar Nebraska rules. *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020). The federal rule provides the same limited circumstances in which a deponent may be instructed not to answer a question. In cases applying the federal rule 30(c)(2), it has been stated, "Unless one of the exceptions enumerated in [r]ule 30(c)(2) is applicable, an attorney typically should lodge a succinct objection to preserve the issue, allow the deponent to answer the question, and then, if necessary, raise the issue with the court in a pretrial or trial motion." *Mitnor Corp. v. Club Condominiums*, 339 F.R.D. 312, 320 (N.D. Fla. 2021). We agree with this general statement and find it applicable in this case.

Contrary to the foregoing statement, Asensio asserts that it was proper for his counsel to instruct him not to answer the questions because it was necessary to preserve a privilege. Asensio makes no claim that either of the other exceptions under Rule 6-330(c)(2) was applicable. Asensio asserts that § 27-706(1) created a privilege for him to refuse to provide

expert testimony regarding the standard of care to be exercised by other medical care providers. Section 27-706(1) generally provides that a judge may appoint expert witnesses on the judge's own motion or on the motion of a party and that such expert witnesses may be agreed upon by the parties or of the judge's own selection. The statute further provides, "An expert witness shall not be appointed by the judge unless he consents to act." § 27-706(1). Asensio relies on the requirement of consent in § 27-706(1) to contend that the statute creates a privilege for an expert witness to refuse to testify.

Initially, we observe that it is not clear to us that by asking the questions at issue, Konsul was, as Asensio claims, attempting to have Asensio provide expert testimony for Konsul. Many of the questions appear aimed at discovering whether Asensio would offer trial testimony that suggested that other medical personnel were responsible for any adverse issues Konsul had experienced related to the placement of the filter. We know of no reason why Konsul would be precluded from probing the possible testimony Asensio might offer at trial, including any testimony that would blame others for possible adverse outcomes. But even assuming Konsul was attempting to have Asensio provide expert testimony, we determine that § 27-706 and the consent requirement therein do not apply to the circumstances in this case. Section 27-706 involves court appointment of an expert witness, and it does not apply when a party is taking the deposition of another witness. In *Kaufman v. Edelstein*, 539 F.2d 811, 818 (2d Cir. 1976), the U.S. Court of Appeals for the Second Circuit distinguished between court-appointed experts covered by the federal equivalent of § 27-706 and other witnesses asked to provide an expert opinion, stating:

The situation of the court appointed expert who is expected to delve deeply into the problem and arrive at an informed and unbiased opinion differs utterly from that of an expert called by a party to state what facts he

> may know and what opinion he may have formed without being asked to make any further investigation.

The Second Circuit further stated that "quite apart from the inference to be drawn from the provision with respect to court-appointed experts," *id.* at 819, common law principles "do not recognize any general privilege for experts," *id.* at 820. The Second Circuit stated that under federal law "there is no constitutional or statutory privilege against the compulsion of expert testimony, and we perceive no sufficient basis in principle or precedent for holding that the common law recognizes any general privilege to withhold . . . expert knowledge." *Id.* By reference to Nebraska jurisprudence, we agree.

We recognize that some other states have held that statutes that are similar to § 27-706 create or imply a privilege for a witness to refuse to give expert testimony, even when the witness was not appointed by the court. In *Borngne v. Chattanooga-Hamilton Hosp.*, 671 S.W.3d 476, 486 (Tenn. 2023), the Supreme Court of Tennessee held that "a defendant healthcare provider cannot be compelled to provide expert opinion testimony about another defendant provider's standard of care or deviation from that standard." The Tennessee court determined that Tenn. R. Evid. 706, which is similar to § 27-706, "contains a blanket consent requirement for court-appointed experts, and . . . if a court must obtain consent from an expert witness, then so must a litigant." *Borngne v. Chattanooga-Hamilton Hosp.*, 671 S.W.3d at 486. In determining that "recognizing such a privilege is good public policy," *id.* at 485, the Tennessee court relied, in part, on decisions of the Supreme Court of Wisconsin that found a privilege under a Wisconsin statute similar to Tennessee's rule 706. In *Carney-Hayes v. Northwest Wis. Home Care*, 284 Wis. 2d 56, 91, 699 N.W.2d 524, 541 (2005), the Wisconsin court held that "a medical witness who is unwilling to testify as an expert cannot be forced to give her opinion of the standard of care applicable to another person or her opinion of the treatment

provided by another person." The Wisconsin court relied on its previous holding in *In re Imposition of Sanctions Alt v. Cline*, 224 Wis. 2d 72, 86, 589 N.W.2d 21, 26 (1999) that "a witness's privilege to refuse to provide expert testimony *is* inherent in Wis. Stat. § 907.06," which required consent of a court-appointed expert witness. The Wisconsin court in *In re Imposition of Sanctions Alt v. Cline* reasoned that the "express grant [in Wis. Stat. § 907.06] implies a privilege to refuse to testify if the expert is called by a litigant." 224 Wis. 2d at 86, 589 N.W.2d at 26.

We decline to find such a privilege to be "implied" by or "inherent" in § 27-706 or to read such a privilege into the Nebraska statute. See *Saint James Apt. Partners v. Universal Surety Co., ante* p. 419, 5 N.W.3d 179 (2024) (stating it is not within province of courts to read meaning into statute that is not there). Moreover, § 27-501 provides:

> Except as otherwise required by the Constitution of the United States or the State of Nebraska or provided by Act of Congress, or the Legislature of the State of Nebraska, by these rules or by other rules adopted by the Supreme Court of Nebraska which are not in conflict with laws governing such matters, no person has the privilege to,

inter alia, "[r]efuse to be a witness" or "[r]efuse to disclose any matter." We read § 27-501 to limit the sources of privileges to those specified, and we decline to read new privileges into statutes that do not explicitly create privileges. Section 27-706, in addition to not being applicable to the facts of this case, also does not specifically provide that it is creating a privilege.

We determine that the district court erred when it held that § 27-706 creates a privilege. Therefore, Asensio's counsel's objection to the questions in the deposition could not be characterized as asserting a privilege, and counsel could not properly advise Asensio not to answer the questions on that basis of privilege under Rule 6-330. The district court erred when it declared the existence of a privilege and approved of

Asensio's refusal to answer questions regarding the other medical care providers' standard of care. However, as explained below, these rulings proved to be harmless.

*Dreyfuss as Expert Witness*
*and Locality Rule.*

Konsul claims that the district court erred when it sustained Asensio's foundation objection and ruled that, based on the locality rule as set forth in *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023), Dreyfuss could not testify regarding the applicable standard of care in Omaha. We find no error in the district court's ruling.

[8,9] We have stated that it is the burden of the proponent of expert testimony to establish the necessary foundation for its admission. *Id*. Expert testimony offered to establish the standard of care in a medical malpractice case is admissible only if its proponent can demonstrate the expert's familiarity with the relevant standard of care in the defendant's community or a similar community. *Id*. Neb. Rev. Stat. § 44-2810 (Reissue 2021) defines the general standard of care in medical malpractice cases as "the ordinary and reasonable care, skill, and knowledge ordinarily possessed and used under like circumstances by members of his profession engaged in a similar practice in his or in similar localities" and provides that to determine what constitutes such ordinary and reasonable care, skill, and diligence in a particular case, the test is "that which health care providers, in the same community or in similar communities and engaged in the same or similar lines of work, would ordinarily exercise and devote to the benefit of their patients under like circumstances."

[10,11] Expert testimony concerning the standard of care in a medical malpractice case should not be received if it appears the witness is not in possession of such facts as will enable him or her to express a reasonably accurate conclusion as distinguished from a mere guess or conjecture. *Carson v. Steinke, supra*. Where an expert's opinion is mere speculation or conjecture, it is irrelevant and cannot assist the trier of fact. *Id*.

Evidence of an expert's experience and education without any evidence of familiarity with the relevant or similar locality is insufficient to affirmatively demonstrate that the expert is competent to testify as to the standard of care. *Id*. Evidence that an expert had never practiced in a defendant's locality goes to the weight of the evidence but does not keep the expert from testifying to the standard of care in the relevant locality if the expert testifies that he or she is nevertheless familiar with the standard of care in the same or similar locality. *Id*.

Section 44-2810 does not define "similar community," but we interpret this term in light of the general purpose of § 44-2810 to define the standard of care to which a defendant is to be held in medical malpractice cases. *Carson v. Steinke, supra*. This purpose would not be served if the similarity of two communities could be determined by considering characteristics that are irrelevant to the level of medical care that is to be expected. Instead, we agree with those jurisdictions that consider medically relevant factors, including available facilities, personnel, equipment, and practices, to determine whether two communities are similar under their medical malpractice statutes. *Id*.

[12] In *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023), we held that the burden is on the proponent of standard-of-care testimony to demonstrate that the expert is familiar with the customary practice among physicians in the defendant's community or a community that is similar in terms of available resources, facilities, personnel, practices, and other medically relevant factors. If a party cannot demonstrate his or her expert's familiarity with such standard of care, then the expert's testimony is properly excluded. *Id*. In *Carson v. Steinke*, we declined an invitation to interpret § 44-2810 to allow an expert unfamiliar with the defendant's community or a similar community to testify to a national standard of care. We recognized that medical standards of care and skill are becoming national rather than local or regional, but we concluded that we could not eliminate the

locality rule explicitly required by the statute that defined the standard of care and set forth public policy as declared by the Legislature.

We further stated in *Carson v. Steinke* that expert testimony establishing a national standard of care is admissible if the expert can establish that the national standard of care does not differ in the defendant's community or a similar community. We stated that testimony regarding a national standard of care must be coupled with the expert's explanation of why the national standard applies under the circumstances.

Applying the principles set forth in *Carson v. Steinke*, the district court did not abuse its discretion when it concluded that Konsul failed to establish Dreyfuss' familiarity with the standard of care in Omaha or that Omaha was similar to other communities with which Dreyfuss was familiar in terms of available medical facilities, personnel, services, or practices.

Dreyfuss initially testified regarding his training and experience in locations including Vermont, New Jersey, and New York. He testified that he prepared for the present case by reviewing case materials, including depositions of Asensio and Konsul and medical records from Konsul's hospitalization. After this testimony, Dreyfuss testified that he was prepared to opine on the standard of care in Nebraska. At that point, Asensio requested a foundational voir dire before Dreyfuss gave his opinion, and in response to Asensio's questioning, Dreyfuss testified that he was not licensed to practice medicine in Nebraska, had not practiced in Nebraska, and had never been in Omaha before the day of the trial. Dreyfuss also testified that he was familiar with the existence of Omaha and Creighton but did not know "anything substantive about them." He conceded that in preparing to testify in this case, he had not come to Omaha or done any investigation into the facilities, personnel, and practices in Omaha.

After Asensio moved to strike Dreyfuss' testimony regarding the standard of care in Omaha, the court allowed Konsul to question Dreyfuss to provide further foundation. At that

point, Dreyfuss generally testified that there was a national standard of care that applied in Omaha, as well as in the locations in which he had trained and practiced. Dreyfuss also testified that he had given testimony in communities he considered to be similar to Omaha. Dreyfuss testified that he was familiar with the resources, facilities, personnel, and practices in communities he considered to be similar to Omaha.

We agree with the district court's determination that this foundation was not sufficient under our decision in *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023). Although Dreyfuss testified that the other communities were similar to Omaha, he did not specifically testify that the communities were similar to Omaha in terms of available resources, facilities, personnel, practices, and other medically relevant factors. Nor did Dreyfuss testify that he was familiar with Omaha in terms of these medically relevant factors; instead, it appeared that his knowledge of Omaha was essentially limited to what occurred in the present case. Dreyfuss also testified that a national standard of care applied in Omaha and in the other communities. However, Dreyfuss did not demonstrate sufficient familiarity with the medically relevant factors in Omaha to establish that the national standard of care did not differ from the standard of care in Omaha or to explain why the national standard applied under the circumstances of this case.

We conclude that the district court properly determined that there was not sufficient foundation under the locality rule for Dreyfuss to opine on the standard of care in this case. The district court did not err when it struck Dreyfuss' testimony regarding the standard of care.

*Deposition Issues, Directed Verdict, and Dismissal of Case.*

Without Dreyfuss' testimony, Konsul provided no evidence of the standard of care, and the district court dismissed Konsul's case. Having determined that the district court did

not err in excluding the testimony of Dreyfuss, we determine that the district court did not err when it granted Asensio's motion for directed verdict and dismissed the case with prejudice.

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law. *Carson v. Steinke, supra*. In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Id*.

[13] To make a prima facie case for medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm. *Id.* Generally, expert testimony is required on each element. *Id*. Because Dreyfuss' testimony was properly excluded, Konsul presented no expert testimony on any of the three elements to make a prima facie case against Asensio. Accordingly, the district court correctly directed a verdict in favor of Asensio.

As we foreshadowed above, we further determine that the district court's error regarding the deposition issues was harmless considering the proper dismissal of the action based on Konsul's failure to present evidence regarding the standard of care. Nevertheless, Konsul argues that if Asensio had been required to answer all the questions at the deposition, Asensio's answers to the questions could have provided evidence regarding the standard of care. We reject these assertions. The questions Asensio refused to answer were directed at the standard of care for the other medical care providers

and not the standard of care for Asensio, who was the only defendant still in the case at the time of the trial. Asensio had already testified in the deposition that his conduct relevant to the facts of this case that challenged his actions met the standard of care, and his answers to the questions posed by Konsul regarding the other medical care providers would not have provided further evidence regarding the standard of care applicable to Asensio's work.

Konsul also argues that Asensio's answers to the questions regarding the other medical care providers could have been reviewed by Dreyfuss and would have qualified Dreyfuss to testify regarding the standard of care in Omaha. Again, we note that Asensio testified regarding the standard of care applicable to his work, and his answers to the questions would not have provided further evidence regarding the standard of care applicable to him and his role in the underlying events. Furthermore, the answers would not have provided the sort of information regarding medically relevant factors that would have qualified Dreyfuss to testify regarding the standard of care in Omaha relevant to the present action against Asensio. We therefore determine that the district court's error regarding the deposition issues was harmless considering the proper dismissal of the action based on Konsul's failure to provide evidence of the standard of care applicable to Asensio. Answers to questions regarding the other medical care providers who performed different tasks would not have informed an assessment that was relevant to Asensio's actions, which formed the basis of the case.

## CONCLUSION

We determine that the district court did not err when it struck Dreyfuss as an expert witness and when it thereafter granted Asensio's motion for a directed verdict and dismissed Konsul's case for failure to provide evidence of the standard of care applicable to Asensio. Although we determine that the district court erred as a matter of law when it reasoned that

§ 27-706 sets forth a privilege that allowed Asensio's counsel to instruct Asensio not to answer Konsul's questions during the deposition, we determine that any error in this respect was harmless because the questions were not directed at, and would not have provided evidence of, the standard of care applicable to Asensio and therefore would not have helped Konsul to provide the standard of care evidence that was required to survive the directed verdict. We therefore affirm the order of the district court that dismissed Konsul's case with prejudice.

Affirmed.

Cassel, J., dissenting in part.

Upon further reflection, I conclude that one principle articulated in *Carson v. Steinke*[1] is inconsistent with and contrary to the locality rule mandated by Neb. Rev. Stat. § 44-2810 (Reissue 2021). I would disapprove the proposition that "[e]xpert testimony establishing a national standard of care is admissible if the expert can establish that the national standard of care does not differ in the defendant's community or a similar community."[2]

A national standard of care is simply contrary to the locality rule. If a standard of care does not apply to a particular locality, then, by definition, it cannot be a "national" standard of care. By prescribing a locality rule, our Legislature has rejected the concept of a national standard of care.

The instant case illustrates the confusion that will ensue from attempts to inject a "national" standard of care into a Nebraska medical malpractice action. If unaccompanied by locality testimony, national standard testimony is insufficient. Where both are presented, national standard testimony serves only to cloud the issue.

---

[1] *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023).

[2] *Id*. at 157, 989 N.W.2d at 415.

I express no opinion regarding the wisdom of the Legislature's choice or any alternative available to it. That is not my role. But unless and until the Legislature amends § 44-2810, courts should reject attempts to assert the existence of a "national" standard of care.

To the extent that the majority opinion here adheres to the quoted articulation, I respectfully dissent. In all other respects, I agree with the majority opinion.