Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/22/2017 08:11 PM CST

Mark A. Putnam, appellant, v.
Keri G. Scherbring et al., appellees.
___ N.W.2d ___

Filed September 29, 2017.    No. S-15-610.

1. **Evidence: Appeal and Error.** Generally, the control of discovery is a
   matter for judicial discretion, and decisions regarding discovery will be
   upheld on appeal in the absence of an abuse of discretion.
2. **Appeal and Error.** Appellate review of a district court's use of inherent
   power is for an abuse of discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a
   trial court's decision is based upon reasons that are untenable or unrea-
   sonable or if its action is clearly against justice or conscience, reason,
   and evidence.
4. **Rules of the Supreme Court: Trial: Time.** Under case progression
   standards adopted by the Nebraska Supreme Court, civil jury cases are
   to be disposed of within 1 year to 18 months of filing, absent extraordi-
   nary circumstances.
5. **Rules of the Supreme Court: Judges: Motions for Continuance.** Trial
   judges are encouraged to implement firm, consistent procedures for
   minimizing continuances to meet the case progression standards of the
   Nebraska Supreme Court.
6. **Rules of the Supreme Court: Attorneys at Law: Courts.** Each mem-
   ber of the bar shall cooperate with the judiciary in meeting the case
   progression standards of the Nebraska Supreme Court.
7. **Courts.** Nebraska courts, through their inherent judicial power, have
   the authority to do all things necessary for the proper administration
   of justice.
8. **Trial: Courts.** A trial court has broad discretion to make discovery and
   evidentiary rulings conducive to the conduct of a fair and orderly trial.

Petition for further review from the Court of Appeals,
Inbody, Riedmann, and Bishop, Judges, on appeal thereto from

the District Court for Douglas County, Thomas A. Otepka, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

Herbert J. Friedman, of Friedman Law Offices, P.C., L.L.O., and Paul Galter, of Butler, Galter & O'Brien, for appellant.

Mark C. Laughlin and Jacqueline M. DeLuca, of Fraser Stryker, P.C., L.L.O., for appellees.

Cathy S. Trent-Vilim, of Lamson, Dugan & Murray, L.L.P., for amicus curiae Nebraska Defense Counsel Association.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

In order to enforce progression orders in an automobile negligence case, the district court excluded untimely disclosed expert opinions regarding medical bills. Relying upon our decision regarding a discovery sanction,[1] a divided panel of the Nebraska Court of Appeals decided that the district court had abused its discretion.[2] We granted further review and now reverse.

## II. BACKGROUND

The district court excluded untimely disclosed expert opinion testimony which was necessary to lay the foundation for past medical bills presented as damages. The chronology of the case is particularly important, as it drove the district court's decision.

---

[1] *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987).

[2] *Putnam v. Scherbring*, No. A-15-610, 2017 WL 163796 (Neb. App. Jan. 17, 2017) (selected for posting to court website).

## 1. Cause of Action and Pleadings

In December 2008, Mark A. Putnam's motor vehicle collided with the motor vehicle driven by Keri G. Scherbring but owned by her parents, Dale J. Scherbring and Janet K. Scherbring.

In April 2012, approximately 40 months after his cause of action arose, Putnam filed suit against the Scherbrings alleging that he sustained injuries and damages as a result of Keri's negligent driving. He sought general and special damages, including resulting medical expenses incurred since the collision.

The Scherbrings admitted that Keri's negligence proximately caused the accident but denied that it proximately caused injury to Putnam. Thus, Putnam had to prove the extent of his resulting damages and that such damages were proximately caused by the accident.

## 2. Case Progression

### (a) Dismissed for Lack of Prosecution

On August 28, 2013, the district court sent notice to the parties' counsel that unless further action was taken, the case would be dismissed for lack of prosecution pursuant to the Rules of Dist. Ct. of Fourth Jud. Dist. 4-10 (rev. 2010). The parties did not follow the procedure or take any action to avoid dismissal.

On October 1, 2013, the district court dismissed Putnam's action for lack of prosecution. Upon Putnam's motion to reinstate, the district court vacated the order of dismissal and reinstated the case.

### (b) Initial Scheduling Order

On October 16, 2013, the court entered the first scheduling order in this case. The order adopted the parties' stipulated proposed order and set forth the following deadlines:

- January 15, 2014—Putnam's deadline to designate expert witnesses;
- March 31, 2014—deadline to complete fact discovery; and
- May 15, 2014—ready for trial date.

  Trial was set for July 23, 2014.

### (c) New Scheduling Order

Putnam apparently missed the deadline to designate his experts and belatedly supplied incomplete disclosures. When it became clear that the remaining deadlines could not be met after this delay, Putnam moved for a new scheduling order. The parties then stipulated to a new scheduling order. The new scheduling order set September 15, 2014, as the deadline for all expert disclosures and discovery, and to be prepared for trial.

The trial was continued to December 17, 2014. As a result of this continuance, the scheduled trial date was over a year after the district court's standard for disposition of 98 percent of its civil jury cases.[3]

### (d) Putnam's First
### Motion to Continue

On November 21, 2014, 26 days before trial was scheduled to begin and 10 weeks after the deadline to be prepared for trial, Putnam moved to continue the trial. The affidavit accompanying the motion stated that Putnam's counsel had been hospitalized after a scheduled heart surgery and "ha[d] not been able to prepare for trial." It appears that the district court was not aware of counsel's health situation until the motion was filed.

The trial was continued to February 18, 2015. The new trial date would have been 16 months after the standard for disposition of 98 percent of its civil jury cases.[4]

---

[3] See Neb. Ct. R. § 6-101(A) (rev. 2013).

[4] *Id.*

(e) Putnam's Second
Motion to Continue

On January 9, 2015, 40 days before the scheduled trial, Putnam filed a second motion to continue. In this motion, his original counsel recited several continuing health concerns that required addition of new lead counsel. However, the new lead counsel had sustained an injury and could not be ready for trial as scheduled.

A hearing was held, and Putnam's counsel offered an affidavit in support of the motion. In it he explained, for the first time, that he had health problems for the duration of 2014 and "was not able to properly prepare for trial." Putnam's new lead counsel also offered an affidavit explaining "it appears that most likely [Putnam] will need to conduct limited additional discovery and the witness and exhibit list may need to be edited relative to medical issues."

The court sustained the motion, without mentioning in its order the oblique request for additional discovery, and continued the trial to June 24, 2015. The new trial date was 11 months after the original trial date and over 20 months after the court's standard for disposition of 98 percent of its civil jury cases.[5]

(f) Motions to Reopen Discovery

On February 18, 2015, Putnam's new counsel filed a motion to reopen discovery for the purpose of serving requests for admission regarding the fairness, reasonableness, and necessity of Putnam's medical expenses. He also filed a supplemental motion on March 26 to add four additional expert witnesses and for additional limited discovery. These requests were nearly 3 years after Putnam filed suit, 1 year after his extended expert opinion disclosure deadline, and approximately 8 months after the original trial date.

---

[5] *Id.*

After a hearing, the district court overruled these motions. In reaching its decision, the court noted that the case was 18 months past the case progression standards target disposition date, that the pending trial date was the fourth date set, that the trial had been continued three times to accommodate Putnam, and that the Scherbrings had been able to timely identify their experts.

### (g) Amended Motion in Limine

Because the parties did not stipulate before trial to the fairness and reasonableness of the medical bills, Putnam needed to present expert testimony to lay this foundation.[6] But Putnam failed to timely disclose such an expert opinion.

To remedy this situation, Putnam acquired a supplemental report from one of his doctors who had been previously identified as an expert witness. The report, dated March 30, 2015, apparently disclosed a new expert opinion that Putnam had suffered a traumatic brain injury. It also reported that the medical bills incurred from treatment by the expert witness, as well as the bills from several other treating physicians, were fair, reasonable, and necessary.

Though the report was dated March 30, 2015, it was not disclosed to the Scherbrings until June 2—22 days before trial. And because discovery was closed, the Scherbrings were unable to follow up on the new opinions or depose the expert witness again before trial. Moreover, the disclosure introduced new material that would significantly change the nature of Putnam's claimed injuries.

---

[6] See, generally, *Connelly v. City of Omaha*, 284 Neb. 131, 146, 816 N.W.2d 742, 756 (2012) ("[a] person who suffers injury as a result of the negligence of another 'is entitled to recover for the *reasonable* value of medical care and expenses *incurred for the treatment* of injuries'") (emphasis supplied) (citing *Steinauer v. Sarpy County*, 217 Neb. 830, 353 N.W.2d 715 (1984)); *Oliverius v. Wicks*, 107 Neb. 821, 187 N.W. 73 (1922) (no recovery for medical and hospital expenses where no evidence of reasonable value thereof).

Following this disclosure, the Scherbrings filed an amended motion in limine to exclude evidence that was not disclosed during discovery, including expert reports and opinions concerning medical bills, as well as medical bills not disclosed during discovery. The record does not include the hearing on the amended motion in limine, or a written order disposing of the motion, but it is clear from the court's trial docket entry and the bill of exceptions that the relevant parts of the motion were sustained.

## 3. Trial

The scope of the sustained amended motion in limine was addressed on the first day of trial, outside the presence of the jury. At this time, the court acknowledged the strangeness of the situation by noting parties typically stipulate to fairness and reasonableness of medical bills and then the plaintiff offers evidence to prove necessity. However, the court noted that even in the absence of a stipulation, it "[did]n't see the prejudice in terms of some unfair surprise to the defendant to allow [the previously disclosed expert] to testify about the reasonableness and necessity for [the expert's] bills up to the date of the deposition." Therefore, the court ruled that the expert could testify to the reasonableness and necessity of those bills. It further clarified that any testimony as to the fairness and reasonableness of all *other* medical bills was to be excluded.

As a result, Putnam was not permitted to introduce the vast majority of his medical bills at trial. For strategic purposes, Putnam decided not to offer the previously disclosed expert's bills in light of the exclusion of the others. However, Putnam testified to the extent of his injuries after the accident and the treatment he received. Other previously disclosed medical providers were also allowed to testify to the treatment they provided Putnam for his injuries.

On this evidence, the jury returned a verdict in favor of the Scherbrings. The district court entered a judgment on the jury verdict, and Putnam timely appealed.

### 4. Court of Appeals' Decision

On appeal, the Court of Appeals, in a split decision, relied on our decision in *Norquay v. Union Pacific Railroad*[7] to conclude that "the district court abused its discretion in excluding, as a discovery sanction, nearly all of Putnam's medical bills, as well as testimony from Putnam's expert witness that the bills were reasonable and necessary."[8] In reaching this decision, the majority opinion emphasized that "the district court abused its discretion by not considering the *Norquay* factors at all."[9] Finding error, the court reversed the judgment and remanded the matter to the district court for a new trial. The Court of Appeals rejected Putnam's other assignments of error.

We granted the Scherbrings' petition for further review.

### III. ASSIGNMENT OF ERROR

The Scherbrings assign that the Court of Appeals erred in finding that the district court abused its discretion when it excluded evidence and expert opinion testimony which were disclosed months after the discovery deadline and after the court had previously continued the trial three times. Putnam did not seek further review of the Court of Appeals' rejection of his other assignments of error.

### IV. STANDARD OF REVIEW

[1-3] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[10] Similarly, appellate review of a district court's use of inherent power is for an abuse of discretion.[11] An abuse of discretion

---

[7] *Norquay v. Union Pacific Railroad, supra* note 1.

[8] *Putnam v. Scherbring, supra* note 2, 2017 WL 163796 at *1.

[9] *Id.* at *10.

[10] *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015).

[11] *Tyler v. Heywood*, 258 Neb. 901, 607 N.W.2d 186 (2000).

occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[12]

## V. ANALYSIS

The Scherbrings and amicus curiae assert that the Court of Appeals applied the wrong analysis and erred in finding an abuse of discretion. They argue that the district court was enforcing its previous orders (which had extended discovery deadlines and continued trial dates) when it excluded the evidence in question. And, they maintain that the court did not need to apply the factors set forth in *Norquay v. Union Pacific Railroad*[13] to exercise this power. For the reasons set forth below, we agree.

### 1. Applicability of *Norquay* Factors

Our analysis in *Norquay v. Union Pacific Railroad* was directed to a trial court's authority to preclude testimony as a discovery sanction. In that case, a party failed to comply with a request for discovery and additionally failed to seasonally supplement its answer to an interrogatory. There was no progression order, and the trial court did not find that the testimony in question was untimely disclosed. Therefore, the court's authority to preclude testimony was premised solely upon its power to issue a sanction under rule 37 of the Nebraska Court Rules of Discovery (now codified as Neb. Ct. R. Disc. § 6-337). To ensure a balanced approach to punish those whose conduct warrants a § 6-337 sanction and to deter those who may be inclined or tempted to frustrate the discovery process, we outlined several factors a court should consider before imposing a sanction.

---

[12] *State v. Chauncey*, 295 Neb. 453, 890 N.W.2d 453 (2017).

[13] *Norquay v. Union Pacific Railroad, supra* note 1.

In light of our summary of the tortured progression of the case before us, it is clear that *Norquay v. Union Pacific Railroad* does not apply. Indeed, at oral argument, Putnam acknowledged the difficulty of arguing otherwise. Here, the parties stipulated to a proposed progression order with a discovery deadline and the district court adopted and entered the progression order. The court was initially flexible and amended the order and continued trial three times to accommodate Putnam. But, it ultimately elected to enforce its progression order when, shortly before trial, Putnam attempted to disclose new expert opinions and evidence which would undoubtedly cause further delay. This was fundamentally different from imposing a sanction for a party's attempt to abuse the discovery process.

[4-6] Under case progression standards adopted by this Court, civil jury cases are to be disposed of within 1 year to 18 months of filing, absent extraordinary circumstances.[14] Trial judges are encouraged to implement firm, consistent procedures for minimizing continuances to meet these standards.[15] And our standards make it clear that the responsibility for compliance does not rest solely on the judiciary. "Each member of the bar shall cooperate with the judiciary in meeting these standards."[16]

[7] Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice.[17] It is apparent that the district court relied on this authority and not its authority under § 6-337 to issue a discovery sanction. Therefore, the correct analytical framework did not require the district court to consider the *Norquay* factors.

---

[14] See § 6-101(A).

[15] See § 6-101(B)(5).

[16] § 6-101(C).

[17] See *In re Interest of Zachary D. & Alexander D.*, 289 Neb. 763, 857 N.W.2d 323 (2015).

## 2. Abuse of Discretion

Having concluded that the district court was not required to consider the *Norquay* factors, we review its exercise of inherent power for an abuse of discretion.[18] We are not unsympathetic to the serious illness of Putnam's original lead counsel and the unfortunate injury to his successor lead counsel. And it is clear that the district court, through repeated extensions and continuances, gave these matters due consideration. Moreover, the Scherbrings repeatedly agreed to (if not initiated) delays and accommodations to opposing counsel.

[8] We have explained that a court abuses its discretion when its decision is based upon reasons that are *untenable or unreasonable* or if its action is *clearly* against justice or conscience, reason, and evidence.[19] This is a fairly deferential standard. Moreover, a trial court has broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial.[20] Given this standard of review and the breadth of the trial court's discretion, we are unable to find an abuse of that discretion.

There is no evidence that the court based its decision to exclude untimely evidence for any reasons that were untenable or unreasonable. In fact, the record reflects that the court carefully considered its decision and sought to achieve a balanced outcome for both parties. For the same reasons, we cannot find that the court's action was *clearly* against justice or conscience, reason, and evidence. As the trial judge said, "proposed scheduling orders have to mean something." Accordingly, we conclude that the district court did not abuse its discretion in excluding the untimely disclosed expert opinion.

The admissibility of the medical bills was dependent upon the admissibility of the expert opinion that they were fair,

---

[18] See *Tyler v. Heywood, supra* note 11.

[19] See *State v. Chauncey, supra* note 12.

[20] See *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

reasonable, and necessary.[21] Therefore, it necessarily follows that the district court did not abuse its discretion in excluding the majority of medical bills for this lack of foundation.

## VI. CONCLUSION

Because the district court exercised its inherent authority to enforce its progression order, we conclude that the analysis set forth in *Norquay v. Union Pacific Railroad* did not apply. We also conclude that it was not an abuse of discretion to exclude evidence disclosed over 1 year after the discovery deadline imposed by the court's progression order. Accordingly, we reverse the decision of the Court of Appeals and remand the cause to the Court of Appeals with directions to affirm the district court's judgment.

Reversed and remanded with directions.

---

[21] See cases cited *supra* note 6 and accompanying text.