Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/08/2025 09:08 AM CDT

- 628 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

Kimberly Ricker, individually and as Special
Administrator of the Estate of Robert
Ricker, deceased, appellant, v. Nebraska
Methodist Health System, Inc., and
Dale W. Orton, appellees.

___ N.W.3d ___

Filed August 8, 2025.    No. S-23-339.

1. **Pretrial Procedure: Appeal and Error.** Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.
2. **Appeal and Error.** Appellate review of a district court's use of inherent power is for an abuse of discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
5. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
6. **Courts: Expert Witnesses.** When a district court relies on its inherent authority to enforce its progression orders by excluding a late-disclosed expert, it is not required to consider the factors in *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 407 N.W.2d 146 (1987), because a different analytical framework applies.
7. **Courts.** Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of

- 629 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

justice. This inherent authority necessarily includes the power to enter, and to enforce, progression orders.

8. **Summary Judgment.** Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

9. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

Petition for further review from the Court of Appeals, Moore, Arterburn, and Welch, Judges, on appeal thereto from the District Court for Douglas County, Jeffrey J. Lux, Judge. Judgment of Court of Appeals reversed and remanded with directions.

Justin W. Pritchett, Michael F. Coyle, Jordan W. Adam, and Karson S. Kampfe, of Fraser Stryker, P.C., L.L.O., for appellant.

Julie M. Ryan and Robert M. Schartz, of Abrahams, Kaslow & Cassman, L.L.P., for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Stacy, J.

Kimberly Ricker, individually and as special administrator of her late husband's estate, brought this wrongful death/medical malpractice action against a hospital and an emergency room physician, alleging her husband died because of their negligence. Over the next several years, the parties engaged in fact discovery, and the district court entered several progression orders, which included deadlines to designate expert witnesses. Ricker did not disclose a medical expert in her

- 630 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

discovery responses, nor did she designate such an expert by the deadlines established in the court's progression orders.

Eventually, the defendants moved for summary judgment, arguing that without a medical expert, Ricker could not prove her malpractice claim and the defendants were entitled to judgment as a matter of law. Approximately 1 week before the summary judgment hearing, Ricker disclosed a recently retained medical expert who opined that the defendants breached the applicable standard of care in treating Ricker's husband. The trial court sustained the defendants' objection to the opinion of Ricker's new expert, reasoning, in the alternative, that exclusion was appropriate as a discovery sanction and as an exercise of the court's inherent authority to enforce its progression orders. Because Ricker had no other expert testimony to support her malpractice claim, the court granted summary judgment in favor of the defendants and dismissed the action with prejudice.

Ricker appealed, and in a memorandum opinion,[1] the Nebraska Court of Appeals reversed the judgment and remanded the cause for further proceedings, reasoning in part that the trial court abused its discretion in excluding the expert's affidavit. On further review, we see no abuse of discretion in the district court's decision to exclude the expert's opinion. We therefore reverse the decision of the Court of Appeals and remand the cause to that court with directions to affirm the district court's judgment.

## I. BACKGROUND

On February 11, 2018, Robert Ricker (Robert) was struck in the head with a blunt object. He went to the emergency room at Nebraska Methodist Health System, Inc. (Nebraska Methodist), complaining of pain in the left side of his head and neck pain extending into his left arm. Robert was treated by emergency physician Dale W. Orton, who diagnosed Robert

---

[1] *Ricker v. Nebraska Methodist Health System*, No. A-23-339, 2024 WL 1515950 (Neb. App. Apr. 9, 2024) (selected for posting to court website).

with abrasions, contusions, and a closed head injury. No cardiac tests were ordered, and Robert was discharged. That night, Robert died in his sleep from an apparent heart attack.

## 1. Complaint

On March 25, 2019, after being appointed special administrator of Robert's estate, Ricker filed this wrongful death/medical malpractice action against Orton and Nebraska Methodist in the district court for Douglas County. Ricker's complaint alleged that Orton was negligent in failing to properly diagnose and treat Robert during his visit to the emergency room on February 11, 2018, and that as a result, Robert experienced a heart attack and died. The complaint alleged that Orton's negligence should be imputed to Nebraska Methodist under the doctrine of respondent superior.

In April 2019, Orton and Nebraska Methodist (collectively the defendants) filed an answer denying negligence and alleging several affirmative defenses. Over the next several years, the parties engaged in fact discovery. Several issues on appeal pertain to discovery disputes and other delays in case progression, so we summarize that history for context.

## 2. Discovery

Early in the case, the district court entered a progression order directing the parties to complete fact discovery by November 29, 2019. In an amended progression order, the court continued the discovery deadline to March 30, 2020.

In June 2019, the defendants served written interrogatories on Ricker, asking, among other things, for the identity of Ricker's medical experts and the nature of and grounds for their opinions. Ricker responded to this interrogatory in August 2019 by stating, "Discovery ongoing; this [a]nswer will be supplemented."

In August 2019, Ricker served the defendants with interrogatories and requests for production. The defendants answered this written discovery in December 2019, but none of the discovery asked about medical experts.

- 632 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

In February 2020, Ricker filed motions to compel, seeking more complete answers to her discovery requests and specifically seeking to compel production of Robert's medical records. The defendants filed supplemental discovery responses on March 12 and produced more than 2,000 pages of "Bates stamped" medical records relating to Robert's care at Nebraska Methodist over the years, up to and including his treatment in the emergency department on February 11, 2018.

Beginning in March 2020, the district court entered several COVID-19-related administrative orders, but none affected discovery or altered the deadlines of the progression order. The parties continued conducting fact discovery beyond the March 2020 deadline in the amended progression order, and in July 2020, they submitted a stipulated second amended progression order, which the court accepted and entered.

The July 2020 order remained the operative progression order for the remainder of the case, and it directed the parties to complete fact discovery by September 7, 2020. Ricker was required to designate her expert witnesses (including the subject matter on which they were expected to testify) no later than September 28, and discovery regarding any such experts was to be completed no later than November 6. The defendants then had until December 4 to designate their expert witnesses, and discovery regarding any such experts was to be completed no later than February 4, 2021. The parties were ordered to be ready for trial no later than April 15, and all dispositive motions were to be filed at least 4 weeks before trial.

The defendants took Ricker's discovery deposition in May 2021, and in July, Ricker took Orton's discovery deposition. Orton's discovery deposition spawned an ongoing discovery dispute, which the Court of Appeals' opinion describes in some detail. Because we do not ultimately reach those discovery issues or rulings on further review, we do not comment on them further.

No party designated an expert witness by the deadlines in the operative progression order, and all parties continued to

- 633 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

engage in fact discovery beyond the September 2020 deadline. From August through November 2020, the defendants served various subpoenas seeking to obtain Robert's medical, employment, and pharmacy records. The defendants also served a second set of interrogatories on Ricker. At about the same time, Ricker supplemented her previous interrogatory answer to identify an economist who was expected to testify as an expert at trial, but Ricker did not identify any medical expert.

### 3. Defendants File Motion for Summary Judgment

In August 2021, the court set a tentative summary judgment hearing for November 16 and later rescheduled the summary judgment hearing for December 14. At Ricker's request, the summary judgment hearing was rescheduled again to January 25, 2022. The defendants were directed to file, no later than 20 days before the rescheduled hearing, their motion for summary judgment, evidence index, and annotated statement of undisputed facts. Ricker was directed to file, no later than 10 days before the hearing, her evidence index and annotated statement of disputed facts, and a briefing schedule was established for both parties.

As ordered, the defendants filed their motion for summary judgment on January 5, 2022, along with an evidence index and an annotated statement of undisputed facts. Among the exhibits to be offered was an affidavit from Orton averring that he met the applicable standard of care for emergency room physicians when treating Robert. In their statement of undisputed facts, the defendants recited that although the amended stipulated progression order required Ricker to designate experts by September 20, 2020, she had failed to identify or designate "any expert witness in this matter regarding standard of care, deviation of standard of care, and causation." In their accompanying brief, the defendants argued that because Ricker had no medical expert witness, she could not prove the material elements of her malpractice claim and the defendants were entitled to judgment as a matter of law.

- 634 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

On January 10, 2022, after the defendants filed their summary judgment materials, Ricker again moved to continue the summary judgment hearing, arguing in part that summary judgment was premature because the discovery disputes involving Orton's deposition had not yet been resolved. Ricker also filed a statement of disputed facts, which lacked any annotation to the record, and an evidence index that did not list any medical expert or opinion.

The appellate record suggests that Ricker's request for a continuance was impliedly granted because the summary judgment hearing was subsequently rescheduled to occur on April 21, 2022. But the summary judgment motion was not actually taken up at the hearing on April 21 due to a series of events that we describe next. And based on those events, it appears the parties and the court treated Ricker's January 10 motion to continue the summary judgment hearing as pending but unresolved.

Counsel for the defendants appeared at the summary judgment hearing on April 21, 2022, but no one appeared on behalf of Ricker. The court entered an order noting that the failure to appear was "most likely due to the recent death of [Ricker's] attorney," Ronald J. Palagi. Given the circumstances, the court set a status hearing for June 29 and ordered Ricker to personally appear for the status hearing and to obtain replacement counsel. The order for status hearing was mailed to Ricker's address, and it is undisputed that she received it.

It is also undisputed that Palagi was a solo practitioner and did not have a succession plan in place at the time of his death, so a trustee was appointed to facilitate the transition of Palagi's cases to new attorneys. The trustee requested and was granted a continuance of the status hearing, and it was rescheduled for September 23, 2022.

Counsel for the defendants appeared for the rescheduled status hearing on September 23, 2022, but neither Ricker nor the trustee appeared. The court rescheduled the status hearing for November 2, but the trustee subsequently asked to

- 635 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

continue the hearing again. The defendants did not oppose that request, and the court rescheduled the status hearing again, this time to December 19.

Counsel for the defendants appeared for the rescheduled status hearing on December 19, 2022, but neither Ricker nor anyone on her behalf appeared. The court then continued the status hearing "one last time" to January 20, 2023.

On January 19, 2023, new counsel entered an appearance for Ricker. The following day, all parties appeared through counsel for the rescheduled status hearing. During that hearing, the court informed Ricker's new counsel that due to the length of time the case had been pending, he would be "picking up the baton from prior counsel rather than starting over." The court set the pending summary judgment motion for hearing on March 22. In a separate order entered February 6, the court resolved all discovery disputes involving Orton's discovery deposition.

Nine days before the March 22, 2023, summary judgment hearing, Ricker's new counsel filed a supplemental evidence index that included an affidavit from a previously undisclosed medical expert opining that Orton breached the applicable standard of care when treating Robert in the emergency room. Two days later, Ricker supplemented her answers to the defendants' interrogatories to identify the new medical expert and summarize his opinion.

### 4. MARCH 2023 SUMMARY JUDGMENT
#### HEARING AND RULING

The summary judgment hearing occurred as scheduled on March 22, 2023, and all parties appeared through counsel. At the start of the hearing, the court took up Ricker's pending request to continue the summary judgment hearing, which was filed by Palagi in January 2022. In support of that request, Ricker's new counsel argued, in part, that he had just retained a medical expert and that additional time was needed to conduct discovery. The defendants opposed another continuance,

- 636 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

arguing that the summary judgment motion had been pending for more than a year and was rescheduled several times, and that Ricker's deadline for disclosing medical experts had expired several years earlier in September 2020. The court took the motion to continue under advisement and proceeded to receive evidence and hear argument on the summary judgment motion.

Ricker and the defendants each objected to the affidavits of the medical expert being offered by the other. The defendants objected to the affidavit of Ricker's new expert on two related grounds: (1) that Ricker had failed to seasonably supplement her discovery responses to identify the expert or provide the substance of the expert's anticipated opinion as required by the discovery rules and (2) that the court should use its inherent authority to enforce the progression order deadline to designate expert witnesses, which expired more than 2 years before Ricker disclosed her new expert.

Ricker objected to Orton's affidavit on a single ground: that the defendants had not disclosed Orton as an expert witness by the progression order deadline. Ricker argued that if the court decided to exclude Ricker's expert affidavit as untimely, it should exclude Orton's affidavit on the same basis. In response, the defendants argued that Orton was a party and not an expert witness, and that under Nebraska case law, a defendant physician does not need to designate himself or herself as an expert witness to be able to offer an affidavit in support of summary judgment.[2] Alternatively, the defendants argued the operative progression order was structured such that the defense did not need to designate a medical expert until after Ricker designated a medical expert and disclosed the substance of the expert's opinions. The court deferred ruling on the evidentiary objections and took the matter under advisement.

---

[2] See *Carrizales v. Creighton St. Joseph*, 312 Neb. 296, 979 N.W.2d 81 (2022).

- 637 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

In a single written order entered April 11, 2023, the court overruled Ricker's motion to continue the summary judgment hearing, ruled on the evidentiary objections to the summary judgment exhibits, entered summary judgment in favor of the defendants and dismissed Ricker's complaint with prejudice, and overruled all remaining motions. We summarize each ruling in turn.

## (a) Ruling on Motion to Continue

In overruling Ricker's motion to continue the hearing, the court noted the motion for summary judgment was filed in January 2022 when Palagi was still representing Ricker and the motion remained pending for more than a year before it was finally heard. The court recited the long procedural history of the case, emphasized the many continuances already requested by and granted to Palagi, and ultimately concluded that Ricker had been given ample time and opportunity to prepare for the summary judgment hearing. The court expressly found that under the circumstances and despite Palagi's death, no good cause had been shown to continue the hearing again. And the court considered it significant that due to the many continuances and delays, the case had already been pending for a length of time that exceeded the civil case progression standards by more than 29 months.[3]

## (b) Rulings on Objections

The district court sustained the defendants' objections to Ricker's expert affidavit but overruled Ricker's objection to Orton's affidavit. It explained its reasoning in detail.

In sustaining the defendants' objections to the affidavit of Ricker's new medical expert, the court found exclusion was warranted on both grounds advanced by the defense. Addressing the first ground, the court ruled that the expert's opinion should be excluded as a discovery sanction under

---

[3] See Neb. Ct. R. § 6-101(A) (rev. 2024).

Neb. Ct. R. Disc. § 6-337 (rev. 2025) (Rule 37) because Ricker failed to seasonably supplement her 2019 answer to the defendants' interrogatory requesting the identity of any expert witness and the substance of the expert's opinion.[4] Addressing the second ground, the court found it was appropriate to exercise its inherent authority to enforce the expert designation deadlines in the operative progression order, and it excluded the affidavit on that basis too, noting that Ricker designated her only medical expert 896 days after the deadline expired. The court considered the impact of COVID-19 on the progression of this case generally and on Ricker's expert witness disclosures in particular, and it expressly found that the extraordinary delay in designating an expert was attributable to Palagi's lack of preparation in prosecuting the case and not to COVID-19.

In overruling Ricker's objection to Orton's affidavit, the court noted that Ricker had not served discovery requests regarding the defendants' experts, so there was no basis to exclude the affidavit as a discovery sanction. The court also found that because Orton was a defendant physician in a medical malpractice action, he did not need to designate himself as an expert witness before offering his own affidavit averring that he met the standard of care.[5] The court also found persuasive the defendants' argument that unless and until Ricker designated a medical expert and disclosed his or her opinions, it was "difficult and unfair" to require the defense to designate an expert in a vacuum.

---

[4] See Neb. Ct. R. Disc. § 6-326(e)(1)(B) (rev. 2025) (party is under duty to seasonably supplement discovery request addressed to identity of expert witnesses and subject matter of expected testimony). See, also, *Norquay v. Union Pacific Railroad*, 225 Neb. 527, 540, 407 N.W.2d 146, 155 (1987) ("[a]s a sanction for noncompliance with . . . the duty to supplement required by Rule 26(e)(1)(B), preclusion of an expert witness' testimony . . . may be an appropriate sanction under Rule 37(d)").

[5] See *Carrizales, supra* note 2.

- 639 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

### (c) Ruling on Summary Judgment and Remaining Motions

The court concluded the defendants were entitled to summary judgment as a matter of law, reasoning that a prima facie case was established through Orton's affidavit and that Ricker had failed to show a genuine factual dispute because she had no admissible medical evidence to support her allegation that Orton violated the standard of care. The court's order therefore granted summary judgment in favor of the defendants and dismissed Ricker's claims with prejudice. In the same order, the court denied all remaining motions. Ricker filed a timely notice of appeal.

## 5. Court of Appeals

Before the Court of Appeals, Ricker assigned and argued multiple errors, some of which related to the trial court's rulings on the various discovery disputes spawned by Orton's deposition and some of which related to the trial court's rulings on summary judgment. Because we conclude the summary judgment rulings are ultimately dispositive of the issues on further review, we limit our discussion of the Court of Appeals' opinion accordingly.

Regarding the summary judgment rulings, Ricker assigned error to (1) overruling her objection to Orton's affidavit, (2) sustaining the defendants' objections to the affidavit of Ricker's new expert, (3) sustaining the defendants' motion for summary judgment, and (4) overruling her motion to continue the summary judgment hearing.

The Court of Appeals found no merit to Ricker's assignment challenging the admission of Orton's affidavit. It reasoned that at the summary judgment stage, "a physician's self-supporting affidavit suffices to make a prima facie case that the physician did not commit medical malpractice"[6] and

---

[6] *Ricker, supra* note 1, 2024 WL 1515950 at *10. See *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

- 640 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

that "for purposes of summary judgment, an expert designation of a defendant doctor is not required as a prerequisite to allow the admission of the doctor's self-supporting affidavit."[7]

But the Court of Appeals found merit to Ricker's argument that it was an abuse of discretion to exclude the affidavit of Ricker's medical expert. In its reasoning, the Court of Appeals focused on the trial court's decision to exclude the affidavit "as a discovery sanction."[8] It did not expressly address the alternative ground relied upon by the district court—its inherent authority to enforce its progression orders by excluding expert opinions that have not been timely disclosed.[9]

In analyzing whether the new expert's affidavit was properly excluded as a discovery sanction under Rule 37, the Court of Appeals recited and applied the five factors discussed in *Norquay v. Union Pacific Railroad*[10]: (1) the explanation for the party's failure to respond, (2) the importance of the expert witness' testimony, (3) the surprise to the party seeking preclusion of the expert's testimony, (4) the time needed to prepare to meet the testimony from the expert, and (5) the possibility of a continuance.

Addressing the *Norquay* factors, the Court of Appeals ultimately concluded the district court abused its discretion in excluding the opinion of Ricker's new expert as a discovery sanction. Regarding the first factor, it noted that due to the death of Palagi, there was no "clear explanation for the failure

---

[7] *Ricker, supra* note 1, 2024 WL 1515950 at *10. See *Carrizales, supra* note 2.

[8] *Ricker, supra* note 1, 2024 WL 1515950 at *12.

[9] See, *Carrizales, supra* note 2 (recognizing that in addition to discovery sanctions, courts have inherent judicial power to enforce deadlines in progression orders); *Putnam v. Scherbring*, 297 Neb. 868, 877, 902 N.W.2d 140, 146 (2017) (observing that court's inherent authority to enforce progression order by excluding late-disclosed expert opinion is "fundamentally different" from imposing discovery sanction).

[10] *Norquay, supra* note 4. See, also, *Eddy v. Builders Supply Co.*, 304 Neb. 804, 937 N.W.2d 198 (2020).

- 641 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

to identify her expert witness earlier in the case."[11] Regarding
the second factor, it concluded the expert's affidavit was essen-
tial to Ricker's case because without an expert, she "could
not prove that a genuine issue of material fact existed."[12] And
regarding the remaining factors, it acknowledged that the late
disclosure came as a surprise to the defendants and that a
continuance would be necessary to permit the defense to "pre-
pare to meet" the new expert's testimony.[13] Nevertheless, it
ultimately concluded that the *Norquay* factors did not support
excluding the affidavit as a discovery sanction.

The Court of Appeals then reversed the summary judg-
ment ruling, reasoning that "[b]ecause we have ruled that this
sanction was an abuse of discretion, summary judgment was
improper."[14] The Court of Appeals did not address Ricker's
assignment that it was an abuse of discretion to deny her
request to continue, deeming that issue "essentially moot."[15]
In remanding the cause for further proceedings, the Court of
Appeals directed the district court to "receive [the expert's]
affidavit and ultimately determine whether it satisfies [Ricker's]
burden to show that a material issue of fact exists."[16]

The defendants filed a timely petition for further review,
which we granted.

## II. ASSIGNMENTS OF ERROR

On further review, the defendants assign multiple errors,
some of which relate to the Court of Appeals' rulings on the
various discovery disputes arising from Orton's deposition,
and some of which relate to its rulings on summary judgment.
Because we find the assigned errors regarding the Court of

---

[11] *Ricker, supra* note 1, 2024 WL 1515950 at *11.

[12] *Id.* at *12.

[13] *Id.*

[14] *Id*. at *13.

[15] *Id*.

[16] *Id*.

- 642 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

Appeals' summary judgment rulings are dispositive, we confine our review to only those assignments.[17] Our disposition makes it unnecessary to reach the assignments of error regarding the Court of Appeals' discovery analysis, and we express no opinion in that regard.

Regarding summary judgment, the defendants assign that the Court of Appeals erred in (1) finding it was an abuse of discretion to exclude the affidavit of Ricker's new medical expert and (2) reversing the entry of summary judgment and remanding the cause for further proceedings.

## III. STANDARD OF REVIEW

[1] Generally, the control of discovery is a matter for judicial discretion, and decisions regarding discovery will be upheld on appeal in the absence of an abuse of discretion.[18]

[2,3] Appellate review of a district court's use of inherent power is for an abuse of discretion.[19] An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[20]

[4,5] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[21] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate

---

[17] See *Ronnfeldt Farms v. Arp*, 317 Neb. 690, 11 N.W.3d 371 (2024) (appellate court need not engage in analysis of issue unnecessary to adjudicate case before it).

[18] *Konsul v. Asensio*, 316 Neb. 874, 7 N.W.3d 619 (2024).

[19] *Putnam, supra* note 9.

[20] *Konsul, supra* note 18.

[21] *Continental Resources v. Fair*, 317 Neb. 391, 10 N.W.3d 510 (2024).

- 643 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[22]

## IV. ANALYSIS

### 1. Affidavit of Ricker's New Medical Expert

As stated, the district court excluded the affidavit of Ricker's late-disclosed medical expert on two separate grounds: (1) as a discovery sanction authorized by Rule 37 of the Nebraska discovery rules[23] and (2) pursuant to its inherent power to enforce its progression order.[24]

[6] We have explained that when a district court relies on Rule 37 to exclude a late-disclosed expert as a discovery sanction, it should consider the *Norquay* factors.[25] But when a district court relies on its inherent authority to enforce its progression orders by excluding a late-disclosed expert, it is not required to consider the *Norquay* factors because a different analytical framework applies.[26]

Although the Court of Appeals limited its analysis to whether exclusion was an appropriate discovery sanction under Rule 37, we focus our further review on whether exclusion was appropriate under the court's inherent authority. And because we ultimately conclude it was not an abuse of discretion for the court to exclude Ricker's expert affidavit pursuant to its inherent authority, we do not address the Court of Appeals' reasoning as it regards Rule 37 discovery sanctions.

---

[22] *Id.*

[23] See § 6-337(d).

[24] See *Putnam, supra* note 9. See, also, *Carrizales, supra* note 2.

[25] See *id.*

[26] See *id.* See, also, *Beran v. Nebraska Ortho. & Sports Medicine*, 28 Neb. App. 686, 948 N.W.2d 796 (2020) (noting factors in *Norquay, supra* note 4, need not be considered when court exercises its inherent power to enforce progression order by excluding late-disclosed expert opinion).

- 644 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

[7] In *Putnam v. Scherbring*,[27] we recognized that Nebraska courts, through their inherent judicial power, have the authority to do all things necessary for the proper administration of justice.[28] This inherent authority necessarily includes the power to enter, and to enforce, progression orders.[29]

This court has adopted case progression standards[30] and has encouraged trial judges to "implement firm, consistent procedures for minimizing continuances to meet these standards."[31] Appropriate procedures include, but are not limited to, establishing "[t]imeframes for the completion of critical steps in the litigation process, including discovery,"[32] and "[u]tilizing early progression orders and mandatory disclosures to shorten the discovery phase and minimize discovery disputes."[33] Our case progression standards expressly state that "[e]ach member of the bar shall cooperate with the judiciary in meeting these standards."[34]

The trial court here entered an early progression order setting mandatory deadlines governing fact discovery, expert witness disclosures, dispositive and nondispositive motions, and a tentative trial date. It subsequently amended the progression order twice to accommodate the parties, and thereafter it entered orders continuing multiple hearings primarily to accommodate Palagi and, later, to allow Ricker a meaningful opportunity to retain new counsel. The trial court was mindful of the impact of these continuances and delays on the progression of this case, noting that by the time Ricker disclosed her medical expert on March 13, 2023, the case had been

---

[27] *Putnam, supra* note 9.

[28] *Id.*

[29] See *id.* See, also, *Carrizales, supra* note 2.

[30] See § 6-101(A).

[31] *Putnam, supra* note 9, 297 Neb. at 877, 902 N.W.2d at 146.

[32] § 6-101(B)(2).

[33] § 6-101(B)(4).

[34] § 6-101(C).

- 645 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

pending for nearly 4 years and had already exceeded the case progression standards "by 29.5 months." The court was also concerned that its operative progression order required Ricker to designate her expert witnesses and provide the substance of their opinions by September 2020, yet she did not do so until March 13, 2023, even though the defendants' motion for summary judgment was set for hearing as early as November 2021 and had been pending since January 5, 2022.

We considered similar circumstances in *Putnam*.[35] The plaintiff in that case filed a negligence action to recover for injuries sustained in an automobile collision. The complaint was filed in April 2012, and in October 2013, the court entered a progression order that set a trial date and included deadlines for discovery and expert witness disclosures. The court thereafter granted several continuances of trial and the related deadlines, all at the plaintiff's request. Several of the continuances were related to health concerns of the plaintiff's counsel, and eventually, new counsel took over. Twenty-two days before trial, the plaintiff's counsel disclosed a new expert opinion that addressed the fairness and reasonableness of certain medical bills and opined that the plaintiff had suffered a traumatic brain injury.

The defendant in *Putnam* successfully moved to exclude the new expert opinion, arguing it introduced new material that would significantly change the nature of the plaintiff's claim, and it did so after the discovery deadline and the expert disclosure deadline in the operative progression order had passed. The jury returned a defense verdict, and the plaintiff appealed. The Court of Appeals reversed, reasoning that the trial court had abused its discretion in excluding the new expert opinion as a discovery sanction without considering the *Norquay* factors. On further review, we disagreed.

We recognized in *Putnam* that the district court had the inherent authority to enforce its progression order deadlines

---

[35] See *Putnam, supra* note 9.

- 646 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

by excluding the late-disclosed expert opinion and that doing so was "fundamentally different from imposing a sanction for a party's attempt to abuse the discovery process."[36] We therefore held that when an untimely expert opinion is being excluded pursuant to the court's inherent authority to enforce its own progression order, "the correct analytical framework did not require the district court to consider the *Norquay* factors."[37] Instead, we reviewed the trial court's exercise of its inherent authority for an abuse of discretion, and found none, reasoning:

> [T]he parties stipulated to a proposed progression order with a discovery deadline and the district court adopted and entered the progression order. The court was initially flexible and amended the order and continued trial three times to accommodate [the plaintiff]. But, it ultimately elected to enforce its progression order when, shortly before trial, [the plaintiff] attempted to disclose new expert opinions and evidence which would undoubtedly cause further delay.[38]

We agreed with the trial court's observation that "'scheduling orders have to mean something,'"[39] and we concluded it was not an abuse of discretion to exclude expert evidence that was first disclosed more than 1 year after the deadline in the progression order and shortly before trial. We thus reversed the decision of the Court of Appeals and remanded the cause with directions to affirm the district court's judgment.

Here, like in *Putnam*, the district court was initially flexible and accommodated requests to amend the progression order and to grant repeated continuances that delayed the case progression. Ultimately, however, it exercised its inherent

---

[36] *Putnam, supra* note 9, 297 Neb. at 877, 902 N.W.2d at 146.

[37] *Id.*

[38] *Id*.

[39] *Id*. at 878, 902 N.W.2d at 147.

- 647 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

authority to enforce the progression order, and we see nothing untenable or unreasonable in its reasoning.

This medical malpractice action was filed in March 2019, and Ricker's counsel was well aware that he would need testimony from a medical expert to establish a prima facie case at trial[40] and to survive a motion for summary judgment.[41] The operative progression order required Ricker to designate expert witnesses and disclose the substance of their opinions by September 28, 2020, but she did not designate a medical expert until March 2023. This disclosure came 896 days after the progression order deadline had expired and just 9 days before the rescheduled summary judgment hearing, which was initially set for November 2021 and was continued at least four times at Ricker's request.

In summary, the district court carefully considered all the factors that may have influenced Ricker's late disclosure under the operative progression order, and it articulated sound reasons for concluding that it was appropriate to enforce the progression order and exclude the expert's late-disclosed opinion, rather than continue the case again when it was already well beyond the case progression standards. This reasoning was neither untenable nor unreasonable, and it was not clearly against justice or conscience, reason, or evidence. To the extent the Court of Appeals found an abuse of discretion on this record, it erred. We therefore reverse the Court of Appeals' decision in that regard.

---

[40] See, e.g., *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004) (recognizing general rule that in medical malpractice case, plaintiff must prove physician's negligence by expert testimony).

[41] See, e.g., *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023) (finding because plaintiff in medical malpractice action failed to present expert testimony, directed verdict in favor of defendant was proper); *Thone v. Regional West Med. Ctr.*, 275 Neb. 238, 745 N.W.2d 898 (2008) (holding defendants entitled to summary judgment on medical malpractice claim because plaintiffs failed to present requisite expert testimony).

- 648 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

Having determined there was no abuse of discretion in excluding the affidavit of Ricker's only medical expert, we turn our attention to the defendants' assignment that the Court of Appeals erred in reversing the district court's summary judgment ruling.

## 2. Summary Judgment

[8,9] Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[42] The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial.[43] If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[44]

Here, the evidence offered by the defendants in support of the motion for summary judgment, including Orton's affidavit that he did not violate the standard of care, was sufficient, if uncontroverted, to entitle them to judgment as a matter of law.[45] The burden thus shifted to Ricker to produce evidence showing the existence of a material issue of fact preventing summary judgment.[46] Without the late-disclosed medial expert, Ricker failed to meet her burden, and the district court properly granted summary judgment in favor of the defendants and dismissed Ricker's claims with prejudice. The Court of Appeals erred in concluding to the contrary, and its

---

[42] *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023).

[43] *Id*.

[44] *Id*.

[45] See *id*.

[46] See *id*.

- 649 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
RICKER v. NEBRASKA METHODIST HEALTH SYS.
Cite as 319 Neb. 628

decision must be reversed. Because of our disposition on further review, it is unnecessary to address any other aspect of the Court of Appeals' opinion.

## V. CONCLUSION

For the foregoing reasons, we reverse the decision of the Court of Appeals and remand the cause to that court with directions to affirm the judgment of the district court.

REVERSED AND REMANDED WITH DIRECTIONS.

HEAVICAN, C.J., not participating in the decision.